UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MCKAYLIN SCHILLER,

          Plaintiff,

    v.                                     Case No. 18-cv-1487

ARDAGH GLASS, INC.,

          Defendant.

## DECISION AND ORDER

**1. Background**

Defendant Ardagh Glass, Inc. is a leading manufacturer of recyclable glass containers for the food and beverage industry that operates numerous facilities nationwide, including its production facility in Burlington, Wisconsin. (ECF No. 31, ¶ 1.) Ardagh's Burlington facility operates 24 hours per day, seven days per week. (*Id.*, ¶ 2.) The Burlington factory uses two types of employee work schedules: a five-day schedule and a swing-shift schedule. (*Id.*, ¶ 4.) Employees on the five-day schedule work five days a week, although the actual days worked differ from week to week and include both weekdays and weekends. (*Id.*, ¶ 5.) Employees on the swing-shift schedule work when the employees on the five-day schedule are off. (*Id.*, ¶ 6.)

Ardagh's Burlington facility maintains an Absenteeism Policy, which provides that employees who have accumulated eight or more absence occurrences within a consecutive 12-month period will be suspended pending termination. (ECF No. 19, ¶ 3.) The Absenteeism Policy excuses employee absences that are protected under the Family and Medical Leave Act (FMLA). (ECF No. 31, ¶ 10.) Ardagh's human resources department was responsible for administering and tracking FMLA leave. (*Id.*, ¶ 13.) At all times relevant hereto Ardagh's human resources manager was Valerie McClain Simone. (ECF No. 32, ¶ 3.)

Ardagh hired plaintiff McKaylin Schiller on June 21, 2016, as a Selector at its Burlington facility. (ECF No. 19, ¶ 1.) A Selector keeps the production line running and inspects bottles. (ECF No. 32, ¶ 6.) Schiller received a copy of Ardagh's Absenteeism Policy shortly after she began her employment, which she reviewed and agreed she would follow. (ECF No. 31, ¶ 12.) Schiller worked 40 hours per week on second shift, from 3:00 p.m. to 11:00 p.m. (ECF No. 32, ¶ 7.)

Schiller became pregnant in April 2017 and began experiencing symptoms that included abdominal pain. (ECF No. 32, ¶ 9.) On June 21, 2017, Schiller applied for FMLA leave because of her serious medical condition. (ECF No. 19, ¶ 4.) In response, Ardagh's human resources department provided her with an FMLA Certification of Health Care Provider form. (*Id.*) On or about June 22, 2017, Schiller provided Ardagh's human resources department with a copy of the completed Certification of Health Care

Provider form stating that she was experiencing flare-ups estimated to occur once per week for one to two hours per episode. (ECF No. 31, ¶ 15.) On or around June 23, 2017, Ardagh's human resources department approved in writing Schiller's request for intermittent FMLA leave for her medical condition. (ECF No. 19, ¶ 5.)

Ardagh uses a form called "Intermittent FMLA Leave" (the Intermittent FMLA Leave Approval Memo) that Ardagh says it provided to Schiller, which states:

> Going forward, to remove the potential for miscommunication and make certain approved days are tracked correctly, we are using **Form F (enclosed)** of the Corporate Family and Medical Leave Policy. This form is used only for employees that are **pre-approved for intermittent FMLA leave**. As noted on the form, **this must be turned in within 2 business days** of your knowledge of the need for the absence or as soon as reasonably possible if the need for leave is not foreseeable. **When you call in, you must state it is for "FMLA for myself."**
>
> If you are unable to provide Human Resources with Form F within 2 business days of your absence, you can call and leave a message with the Human Resources Office within those 2 business days (262-767-3733). This message will be date and time stamped and will be acceptable until your next working day when you can turn the form in.
>
> Additional forms are available in the Human Resources office and need to be completed timely for each requested absence or partial absence. Please see Human Resources if you have any questions.

(ECF No. 31, ¶ 17 (emphasis and underlining in original).)

"Form F" of Ardagh's Corporate Family and Medical Leave Policy (referenced in the Intermittent FMLA Leave Approval Memo) states:

> I acknowledge I am required to complete this form for each absence I wish to apply to my pre-approved intermittent leave status and that I must submit this form to my Human Resources department within two business days of my knowledge of the medical need or as soon as practicable if the need for leave is not foreseeable.

(ECF No. 32, ¶ 21.) Employees could either submit Form F to Ardagh's human resources department in person or they could place it in a secure drop box located outside the human resources department that was accessible to employees 24 hours a day. (ECF No. 31, ¶ 22.) The information that Ardagh receives from its call-in requirement is tracked on a factory call log that its production managers and supervisors use to determine daily staffing needs and to assess the facility's productivity. (*Id.*, ¶ 24.) Form F is used by Ardagh's human resources department to track absences that employees seek to excuse under the FMLA. (*Id.*, ¶26.)

In response to Ardagh's proposed findings of fact, Schiller states that she "disputes that Ardagh provided Ms. Schiller with information regarding Ardagh's procedures for tracking intermittent FMLA." (ECF No. 31, ¶ 20.) Schiller also disputes that Ardagh provided its FMLA form to her. (ECF No. 31, ¶ 16.) But Schiller asked her union steward, who was also her aunt, where to get Form F and was directed to the employee break room. (ECF No. 19-1 at 14, 50:8-18.)

Due to Schiller's serious health condition, she was unable to work and used her pre-approved intermittent FMLA to be absent from work on 15 different days between July 6, 2017, and October 6, 2017. (ECF No. 32, ¶ 33.) For each of these absences Schiller

4

timely completed Form F and submitted it to Ardagh. (*Id.*, ¶ 36.) Schiller's absences from July 6, 2017, to October 6, 2017, were approved by Ardagh and did not count against Schiller under Ardagh's Absenteeism Policy. (*Id.*, ¶ 37.) According to the parties, as of October 2017, Schiller had accumulated "at least five total occurrences under Ardagh's Absenteeism Policy" which were not FMLA-related. (ECF No. 31, ¶ 28.)

On Sunday October 8, 2017, Schiller was absent from work and called her supervisor before her shift. (ECF No. 19, ¶ 6.) Her need for intermittent FMLA leave on October 8 was not foreseeable. (ECF No. 32, ¶ 39.) Schiller was not scheduled to work on Monday, October 9, or Tuesday, October 10, 2017. (ECF No. 19, ¶ 7.) On Wednesday, October 11, 2017, Schiller returned to work and provided Ardagh's human resources department with a completed Form F for her absence on October 8, 2017. (*Id.*, ¶ 8.)

On Friday, October 13, 2017, Schiller was again absent from work and called her supervisor before her shift. (ECF No. 19, ¶ 9.) Schiller had pre-approved vacation on Saturday, October 14, 2017, and did not work that day. (*Id.*, ¶ 10.) On Sunday, October 15, 2017, Schiller was again absent from work and called her supervisor before her shift. (*Id.,* ¶ 11.) Schiller was not scheduled to work on Monday, October 16, 2017, or Tuesday, October 17, 2017. (*Id.*, ¶ 12.) On Wednesday, October 18, 2017, Schiller returned to work and provided Ardagh's human resources department with two completed Form F documents for her absences on October 13 and October 15. (*Id.,* ¶ 13.) Schiller's need for

intermittent FMLA leave on October 13 and October 15, 2017, was not foreseeable. (ECF No. 32, ¶¶ 45 and 49.)

Ardagh charged Schiller with three absence occurrences for her absences on October 8, 13 and 15, claiming that her submission of the three FMLA Form F documents was late. (ECF No. 31, ¶ 40.) These three absence occurrences, when added to Schiller's previous attendance occurrences, resulted in more than eight total occurrences. (*Id.*, ¶ 41.) (As stated above, the parties agree that, prior to October, Schiller had accumulated "at least five" occurrences that were not FMLA-related. For Schiller's three October absences, when combined with her prior absences, to result in more than eight total occurrences, her prior absences must have been not "at least five" but more than five.)

Pursuant to Ardagh's policy, Schiller was suspended pending termination. (ECF No. 31, ¶ 40.)) On October 23, 2017, Ardagh held a suspension pending termination meeting, which included Schiller, her manager, Andrew Perkowski, several union representatives, Ardagh's Human Resources Manager, Valerie McClain Simone, and Human Resources Generalist Rebecca Richter. (*Id.*, ¶ 43.) During the meeting, Ardagh's human resources representatives explained to Schiller that her recent Form F submissions were untimely, and therefore her absences were not excused under the FMLA. (Id., ¶ 44.) As a result, she was told that the company intended to terminate her

employment under the Absenteeism Policy. (*Id*.) Ardagh terminated Schiller's employment effective October 23, 2017. (ECF No. 19, ¶ 15.)

2. **Procedural Background**

Schiller filed this lawsuit claiming that Ardagh interfered with her FMLA rights when it terminated her for absences that should have been protected under the FMLA. (ECF No. 1.) All parties consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 8.) Both Schiller and Ardagh have filed motions for summary judgment. (ECF Nos. 20, 25.) Both motions have been fully briefed and are ready for resolution.

3. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-

moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

**4. Analysis**

The FMLA requires eligible employers to provide its employees with up to twelve weeks of leave per year to care for a child, spouse, or parent with a "serious health condition" or for an employee's own serious health condition. 29 U.S.C. § 2612(a). An employer is prohibited from interfering with, restraining, or denying the "exercise or attempt to exercise" any right under the FMLA. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA interference, a plaintiff must prove that: (1) she was eligible for the FMLA's protections; (2) the employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take FMLA leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018).

The FMLA's implementing regulations address an employer's right to establish a policy for employees providing notice of their need to take FMLA leave and the employee's obligation to abide by that policy:

> When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. See § 825.303(c).

8

29 C.F.R. § 825.303(a). The next provision of section 825.303 addresses the content of the notice that the employee must provide:

> When an employee seeks leave due to a qualifying reason, for which the employer has previously provide the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying.

29 C.F.R. § 825.303(b). Finally, § 825.303(c) states:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances….If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, the FMLA-protected leave may be delayed or denied.

"[A]n employee's failure to comply with [her] employer's internal leave policies and procedures is a sufficient ground for termination and forecloses an FMLA claim." *Righi v. SMC Corp. of Am.*, 632 F.3d 404, 411 (7th Cir. 2011).

In moving for summary judgment, Schiller contends that Ardagh cannot implement a policy using its Corporate Form F that is more restrictive than the notice requirement contained in the FMLA regulations. The regulations, she argues, allow her to reference either the FMLA or her qualifying reason when giving notice, *see* 29 C.F.R. §

9

825.303(b), and Ardagh's requirement that she turn in Form F within two business days is more restrictive than that. But even if Ardagh's use of Form F was permissible, Schiller turned in the form for her unforeseeable October absences as soon as reasonably practicable, which is all that is required by Form F.

In its motion for summary judgment, Ardagh argues that its FMLA leave policy required Schiller to turn in Form F to Ardagh's Human Resources Office within two business days of her need for leave, or to call the Human Resources Office if she was unable to do so, and she did neither. Having failed to comply with Ardagh's notice requirements, Schiller cannot be heard to complain that Ardagh improperly counted her October 2017 absences as unexcused under the FMLA.

**4.1 Alleged Conflict between the Regulations and Form F**

Schiller argues that "29 C.F.R. § 825.303(b) governs notice requirements for unforeseeable FMLA leave when an employer has previously provided the employee with FMLA protected leave." (ECF No. 29 at 6.) Because Ardagh had previously provided FMLA-protected leave to Schiller for her serious health condition, in order to provide sufficient notice to Ardagh for her October absences all she was required to do was specifically reference the qualifying reason for her leave (*i.e.*, her specific serious health condition) or the need for FMLA leave. (*Id*.) Because there is no dispute that she called Ardagh in advance of each of her October shifts to tell Ardagh that she would be absent for reasons related to her approved FMLA leave, no more was required. (*Id*. at 6-

7.) She argues that Ardagh's requirement that employees also submit Form F "is not permitted as a matter of law because it is more restrictive than the FMLA regulations." (*Id*. at 9.)

In arguing that its notice requirement does not violate the FMLA, Ardagh states that 29 C.F.R. § 825.303(b), upon which Schiller's argument relies, addresses the content of the notice that an employee is required to provide, not to whom she must provide that notice, which is the issue here. (ECF No. 33 at 6.) Nothing in subsection (b) prevents employers like Ardagh from insisting on compliance with their "usual and customary notice and procedural requirements" as allowed under subsection 825.303(c). (*Id*.) It argues that its FMLA leave approval process serves two separate purposes. The requirement that employees call in to advise their supervisor that they will not be in is to ensure proper staffing and coverage during production. (ECF No. 33 at 7.) The requirement that employees submit Form F to human resources serves an entirely different purpose: it allows human resources to track FMLA use, remaining leave, and to ensure that absences are excused if protected under the FMLA. (*Id.* at 7-8.)

Nothing in 29 C.F.R. § 825.303(b) can be interpreted as dictating to whom employers may require their employees to give notice of their need for FMLA leave, or limits the notice to one person on each occasion. As Ardagh argues, the purpose of subsection (b) is to set forth the type of information employees have to provide to their employers when seeking FMLA leave. It does not override subsection (c), which allows

11

employers to insist on an employee's compliance with the employer's "usual and customary notice and procedural requirements for requesting leave[.]" Thus, no basis exists for Schiller's argument that Ardagh's requirement that employees submit Form F "is not permitted as a matter of law because it is more restrictive than the FMLA regulations."

**4.2 Compliance with Form F**

Ardagh does not dispute that Schiller was eligible for the FMLA's protections, that Ardagh is covered by the FMLA, or that Schiller was entitled to take leave under the FMLA. The only issues are whether Schiller provided sufficient notice of her intent to take FMLA leave and, in turn, whether Ardagh denied her FMLA benefits to which she was entitled. *See Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018).

As stated above, Form F contains the following:

> I acknowledge I am required to complete this form for each absence I wish to apply to my pre-approved intermittent leave status and that I must submit this form to my Human Resources department within two business days of my knowledge of the medical need or as soon as practicable if the need for leave is not foreseeable.

(ECF No. 32, ¶ 21.) Schiller argues that this language is clear: in the event the need for leave is not foreseeable, the employee needs to submit Form F as soon as practicable, *not* within two business days, as Ardagh contends. (ECF No. 29 at 11.) Despite arguing in its own motion for summary judgment that Schiller did not submit Form F within two business days of any of her three October absences (ECF No. 22 at 16-17), in responding

12

to Schiller's motion for summary judgment Ardagh does not dispute Schiller's reading of Form F.

Nor could it. The court agrees with Schiller that Form F is clear that, when the need for leave is not foreseeable, an employee must submit Form F to Ardagh's Human Resources department as soon as practicable. Under ordinary rules of grammar, the requirement in Form F that it be submitted within two business days applies only when the need for leave is foreseeable. Thus, the question is whether the court can conclude as a matter of law that Schiller submitted Form F as soon as practicable after her October 2017 absences.

Ardagh's position is that "as soon as practicable" means within two business days unless the employee is incapable of submitting Form F within that time period. (ECF No. 33 at 15-16.) But Form F does not say that. As stated, the requirement that Form F be submitted within "two business days" of the employee's knowledge of the need for leave applies only when the employee knows ahead of time of the medical need for time off. Nothing in Form F says that, when the need for leave is not foreseeable, "as soon as practicable" means two business days absent extenuating circumstances.

Schiller's position is that turning Form F in on her first day back at work was "as soon as practicable." (ECF No. 29 at 11.) She points to the absence of any language in Form F stating that "as soon as practicable" does *not* mean an employee's first day back

at work. (*Id.* at 13.) Whether someone has done something "as soon as practicable" typically will depend on the facts of the particular situation—that is, it will usually be a question for the jury to answer. *See, e.g.*, *Brooks v. Cmty. Mem'l Hosp. of Menomonee Falls, Inc.*, No. 17-CV-659, 2018 U.S. Dist. LEXIS 97519, at *17 (E.D. Wis. June 11, 2018).

But here it is undisputed that Schiller submitted the form immediately on her return to work. Because employees could not submit Form F by fax or email, Ardagh's interpretation of Form F (requiring that it be hand-delivered within two days of the employee's absence) would require a special, unpaid trip for employees not scheduled to work those next two days. Interpreting Form F as imposing such a requirement is unreasonable. Consequently, there is no genuine dispute that Schiller complied with the instructions contained on Form F and submitted it "as soon as practicable" following her unforeseeable FMLA absences.

**4.3 Compliance with the FMLA Leave Approval Memo**

However, Ardagh's Intermittent FMLA Leave Approval Memo contains a requirement not set forth in Form F. Similar to what is provided in Form F (although not worded identically), the memo states that Form F "**must be turned in within 2 business days** of your knowledge of the need for the absence or as soon as reasonably possible if the need for leave is not foreseeable." (ECF No. 31, ¶ 17 (emphasis and underlining in original).) Importantly for purposes of this motion, the memo also says:

> If you are unable to provide Human Resources with Form F within 2 business days of your absence, you can call and leave a message with the

14

> Human Resources Office within those 2 business days (262-767-3733). This message will be date and time stamped and will be acceptable until your next working day when you can turn the form in.

(ECF No. 31, ¶ 17.)

It is Ardagh's position that the FMLA Leave Approval Memo required Schiller to either return Form F to human resources within two business days of her need for leave or call human resources if she was unable to do so. And yet on the three October days on which she was absent from work she failed to either submit Form F to human resources within two business days of being absent or call in to say she would not be able to do so. As a result, Ardagh properly charged her absences as not protected by the FMLA. (ECF No. 33 at 14-18.)

In response to Ardagh's proposed findings of fact, Schiller disputes ever receiving the FMLA Leave Approval Memo. (ECF No. 31, ¶ 20.) However, in the deposition testimony that she cites in support of her assertion that she never received the Memo, she did not actually deny receiving it. She testified only that she did not recall receiving it. (ECF No. 19-1 at 13, 49:5-24.)

But accepting for purposes of Ardagh's motion that Schiller did receive the memo, Ardagh is not entitled to summary judgment unless its position is supported by the text of the Leave Approval Memo. The biggest difference between the Leave Approval Memo and Form F is the inclusion in the Leave Approval Memo of the provision stating, "If you are unable to provide Human Resources with Form F within 2

business days of your absence, you can call and leave a message with the Human Resources Office within those 2 business days (262-767-3733)." Form F contains no such provision. Read in isolation, this sentence supports Ardagh's argument that, whether the leave was foreseeable or not, notice must be provided to the human resources department within two business days of the absence, either by calling human resources or by submitting Form F.

But the memo must be read in its entirety:

As you know, you have been approved and are entitled to intermittent leave under the Family and Medical Leave act. This is a complicated part of the law to track and has the potential for miscommunication as to what days or partial day absences employees are requesting to have off on approved leave.

Going forward, to remove the potential for miscommunication and make certain approved days are tracked correctly, we are using **Form F (enclosed)** of the Corporate Family and Medical Leave Policy. This form is used only for employees that are **pre-approved for intermittent FMLA leave.** As noted on the form, **this must be turned** in **within 2 business days** of your knowledge of the need for the absence or as soon as reasonably possible if the need for leave is not foreseeable. **When you call in, you must state it is for "FMLA for myself'.**

If you are unable to provide Human Resources with Form F within 2 business days of your absence, you can call and leave a message with the Human Resources Office within those 2 business days (262-767-3733). This message will be date and time stamped and will be acceptable until your next working day when you can turn the form in.

Additional forms are available in the Human Resources office and need to be completed timely for each requested absence or partial absence. Please see Human Resources if you have any questions.

(ECF No. 1-1 at 1 (emphasis and underlining in original).) As in Form F, the memo provides two deadlines for turning in Form F, depending on whether the need for leave was foreseeable or not. If the leave is foreseeable, Form F must be turned in within two days of Schiller learning of her need for leave. If the need for leave is unforeseeable, Form F must be submitted "as soon as reasonably possible"[1].

It is in this context that the next paragraph states what Schiller is to do if she cannot submit Form F within two business days: call and leave a message with the Human Resources Office. When read in conjunction with the preceding paragraph, the obligation to call in kicks in only when Form F cannot be turned in within two business days of the known need for leave.[2] The call-in procedure in the third paragraph is inapplicable to unforeseeable absences.

The memo contains one final requirement. The last sentence of the second paragraph says, "**When you call in, you must state it is for 'FMLA for myself'.**" Under Ardagh's generally applicable attendance policy, all employees who are going to be absent must call in at least an hour before the start of their shift. (ECF No. 19-2 at 48.) This sentence required Schiller to not merely call in, but to call in and say that she

---

[1] Form F says "as soon as practicable" but no one argues the distinction is consequential.
[2] The memo is phrased in the permissive— "you *can* call"—rather than, for example, "shall" or "must, and thus there is a strong argument that under no circumstances is calling human resources required. But Schiller does not make this argument.

17

would be absent for FMLA purposes. There is no dispute that she complied with this requirement.[3] (ECF Nos. 12, ¶¶ 16, 21; 19-1 at 17-18, 65:20-23; 32, ¶¶ 40, 44).

Consequently, the court finds that Schiller complied with Ardagh's policies as set forth on Form F and the Leave Approval Memo. As such, she provided sufficient notice of her intent to take FMLA leave. As a result, by including the October 2017 absences as a basis for terminating Schiller's employment, Ardagh denied her FMLA benefits to which she was entitled. Therefore, Ardagh interfered with Schiller's rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1). Because an employer's intent is irrelevant to an FMLA interference claim, *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 995 (7th Cir. 2010) (citing *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)), and Schiller's complaint alleges only a claim of interference (ECF No. 1), Schiller is entitled to summary judgment on her claim. The only factual issue that remains is the question of damages.

**IT IS THEREFORE ORDERED** that Ardagh Glass Inc.'s motion for summary judgment (ECF No. 20) is **denied**.

---

[3] The court does not consider whether this requirement was consistent with 29 C.F.R. § 825.301(b) which states, "An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice ….

**IT IS FURTHER ORDERED** that McKaylin Schiller's motion for summary judgment (ECF No. 25) is **granted**. The court will schedule a telephonic conference.

Dated at Milwaukee, Wisconsin this 31st day of March, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge